IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Terry M. Ledbetter, Sr., | ) | |
| | ) | Civil Action No. 8:10-CV-00195-JDA |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a final Order pursuant to Local Civil Rules 73.02(B)(1) and 83.VII.02, D.S.C., 28 U.S.C. § 636(c), and the Honorable Margaret B. Seymour's June 11, 2010 Order referring this matter for disposition.  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the decision of the Commissioner is reversed, and the case is remanded to the Commissioner for further administrative action consistent with this Order.

**PROCEDURAL HISTORY**

Plaintiff filed a claim for DIB and SSI on January 12, 2005 (protective filing date, January 3, 2005), alleging a disability onset date of January 9, 2004. [R. 56, 71, 305.] The claim was initially denied on June 24, 2005, [R. 41–45] and was denied upon reconsideration by the Social Security Administration ("the Administration") on October 19,

2005 [R. 48–49].  Plaintiff requested and was granted a  hearing before Administrative Law Judge ("ALJ") Arthur L. Conover on July 12, 2007.  [R. 52, 1146–65.]  By decision dated August 31, 2007, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act").  [R. 20.]

Following his review of the evidence, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1.  [R. 22, Finding 4.]  The ALJ also found that (1) Plaintiff had the residual functional capacity to perform an unlimited range of exertional activity; (2) Plaintiff needed to avoid concentrated exposure to environmental irritants; needed simple, routine, repetitive work; and needed to avoid waiting on the public as customers, either in person or on the telephone; (3) Plaintiff could not perform any supervisory responsibility and needed to avoid large crowds in the workplace; and (4) Plaintiff needed ready access to a bathroom.  [R. 24, Finding 5.]   With these restrictions, the ALJ found Plaintiff was unable to perform any past relevant work [R. 26, Finding 6], but jobs existed in significant numbers in the national economy that Plaintiff could perform, including the jobs of manufacturing laborer, linen room attendant, and hand packer [R. 27, Finding 10].  On December 11, 2009, the ALJ's findings became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review of the hearing decision.  [R. 5–10; 20 C.F.R. § 404.981.]  Plaintiff filed this action for judicial review on January 26, 2010.

## THE PARTIES' POSITIONS

Plaintiff contends that the Commissioner erred when the ALJ (1) failed to properly evaluate the "medical source opinions" of Karen Cleven, a nurse practitioner, and John

2

Miracle, a licensed professional counselor; (2) failed to properly evaluate Plaintiff's credibility; and (3) relied on flawed vocational expert testimony.  Plaintiff also argues the Appeals Council failed to properly consider new and material evidence submitted with Plaintiff's request for review of the ALJ's decision.  [Doc. 13.]

The Commissioner contends that the ALJ properly evaluated the opinions of Cleven and Miracle, neither of whom were "acceptable medical sources."  The Commissioner also states that, because the ALJ had the opportunity to observe the demeanor of Plaintiff and to determine the credibility of Plaintiff, the ALJ's observations concerning Plaintiff's credibility are to be given great weight.  Further, the Commissioner claims that the hypothetical considered by the vocational expert was proper, although it excluded limitations found by Cleven and Miracle, because the ALJ found Cleven and Miracle's testimony to be unsupported by the record.  Lastly, the Commissioner contends that the Appeals Council was justified in denying review because the material presented was not "new."  [Doc. 14.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687

(S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "'allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ),'" not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence.  *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse a Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).   Where the Commissioner's decision "is in clear

disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the plaintiff's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the plaintiff disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor

the Appeals Council indicated the weight given to relevant evidence).  On remand under

sentence four, the ALJ should review the case on a complete record, including any new

material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant

may produce further evidence on remand.").  After a remand under sentence four, the court

enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*,

941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

> In contrast, sentence six provides:

> > The court may . . . at any time order additional evidence to be
> > taken before the Commissioner of Social Security, but only
> > upon a showing that there is new evidence which is material
> > and that there is good cause for the failure to incorporate such
> > evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the

basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

determination of disability at the time the application was first filed; (2) the evidence is

material to the extent that the Commissioner's decision might reasonably have been

different had the new evidence been before him; (3) there is good cause for the claimant's

failure to submit the evidence when the claim was before the Commissioner; and (4) the

claimant made at least a general showing of the nature of the new evidence to the

reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. §

405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by

amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[1]  With remand under sentence

six, the parties must return to the court after remand to file modified findings of fact.

*Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and

does not enter a final judgment until after the completion of remand proceedings.  *See*

*Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C.

§ 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or which
> has lasted or can be expected to last for a continuous period
> of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations

have reduced the statutory definition of disability to a series of five sequential questions.

---

[1]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Ashton v. Astrue*, No. 6:10-cv-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

*See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Id.*  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, 20 C.F.R. 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he

8

is generally presumed to be able to engage in substantial gainful activity.  20 C.F.R. §§ 404.1574, 404.1575.

**B.**    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B).

**C.**    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration

9

requirement found at 20 C.F.R. 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[2] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. § 404.1520(f); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[3]  20

---

[2]Residual functional capacity is "the most [a claimant] can do despite [his] limitations."  20 C.F.R. § 404.1545(e)

[3]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a.  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  *Id.*

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31

(4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving

exertional limitations).  When a claimant suffers from both exertional and nonexertional

limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case,

the Commissioner must use a vocational expert to establish the claimant's ability to

perform other work. 20 C.F.R. § 404.1569a (2001); *see Walker*, 889 F.2d at 49–50

("Because we have found that the grids cannot be relied upon to show conclusively that

claimant is not disabled, when the case is remanded it will be incumbent upon the

[Commissioner] to prove by expert vocational testimony that despite the combination of

exertional and nonexertional impairments, the claimant retains the ability to perform

specific jobs which exist in the national economy.").  The purpose of using a vocational

expert is "to assist the ALJ in determining whether there is work available in the national

economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the

vocational expert's testimony to be relevant, "it must be based upon a consideration of all

other evidence in the record, . . . and it must be in response to proper hypothetical

questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    **Developing the Record**

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783

F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant

issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important

when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir.

1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record.  *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)).  If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence.  *Craig*, 76 F.3d at 590.  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See id.* (holding there was sufficient evidence for

the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(d)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(e). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

IV.    **Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig,* 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id*. (emphasis in original) (citing *Craig*, 76 F.3d at 595).

14

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman*, 829 F.2d at 518. The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if

> available, should be obtained and considered.  Because pain
> is not readily susceptible of objective proof, however, the
> absence of objective medical evidence of the intensity,
> severity, degree or functional effect of pain is not
> determinative.

SSR 90-1p, 55 Fed. Reg. 31, 898-02 (Aug. 6, 1990), *superseded by* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996) ("If an individual's statements about pain or other symptoms

are not substantiated by the objective medical evidence, the adjudicator must consider all

of the evidence in the case record, including any statements by the individual and other

persons concerning the individual's symptoms."); *see* 20 C.F.R. § 416.929(c)(1)–(c)(2).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the

record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ

must articulate specific and adequate reasons for doing so, or the record must be obvious

as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Although credibility determinations are generally left to the ALJ's discretion, such

determinations should not be sustained if they are based on improper criteria.  *Breeden*,

493 F.2d at 1010 ("We recognize that the administrative law judge has the unique

advantage of having heard the testimony firsthand, and ordinarily we may not disturb

credibility findings that are based on a witness's demeanor.  But administrative findings

based on oral testimony are not sacrosanct, and if it appears that credibility determinations

are based on improper or irrational criteria they cannot be sustained.").

## <u>APPLICATION AND ANALYSIS</u>

## Weight Given to Medical Opinions of Cleven and Miracle

16

Plaintiff contends that the Commissioner's findings are in error because the ALJ failed to properly evaluate the "medical source opinions"[4] of Cleven and Miracle. The Court agrees.

The regulations require that all medical opinions in a case be considered. 20 C.F.R. § 404.1527(b). All "acceptable medical source" opinions, regardless of who provides them, are evaluated pursuant to the following non-exclusive list:

> (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.

*Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). SSR 06-03p discusses the application of these factors to the opinions of sources other than "acceptable medical sources"; SSR 06-03p provides:

> [T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise *ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning*, when such opinions may have an effect on the outcome of the case.

SSR 06-03p, 71 Fed. Reg. 45,593-03 (Aug. 9, 2006) (emphasis added). Here, the ALJ failed to provide a discussion of the evidence that allows the Court to follow his reasoning.

Plaintiff's alleged onset of disability is January 9, 2004. The record reveals that he began treatment with John Miracle, M.S., LPC, in March 2004 after being referred by his primary care physician. [R. 274.] After his initial intake session, Plaintiff saw Miracle for therapy in March, April, and May 2004. [R. 271–73.] By letter dated December 23, 2004,

---

[4]*See* 20 C.F.R. § 404.1502.

Miracle informed the "Department of Social Services Rutherford County" that Plaintiff was apparently experiencing major depression and significant levels of anxiety.  [R. 270.] Plaintiff had told Miracle that his financial pressures required spreading his sessions out, and Miracle guessed that Plaintiff had not continued his therapy due to financial pressures.

Thereafter, Miracle wrote a "narrative report" to Plaintiff's attorney concerning Plaintiff's "overall clinical situation."  [R. 267.]  Miracle concluded:

> Because of the poor self-esteem and inability to see himself make positive changes, moderate to severe levels of depression and mild to moderate levels of anxiety were noted. Consequently the client's ability to participate on a daily basis in a productive manner was significantly decreased.  It was noted that the client did make some progress in opening up some socialization and seemed to be showing some positive change in mood to the increase in the Zoloft to 200mg but at the point of his last session on 5-28-04 his progress was only minimal.  At the time of the last session it appeared that the client's prognosis for recovery was poor to fair at best . . . .  His overall condition at the last session appeared to be one that would last beyond 12 months given his history to date and his presenting issues.

> I have not seen the client since 5-28-04 and cannot make a determination whether he can do full-time competitive work.  All I can say is at the time of our last meeting he certainly appeared disabled and not able to do full-time work.

[R. 269.]

On June 16, 2005, Karen Cleven, MSN, ANP-C, treated Plaintiff for the first time after his suicide attempts in December 2004 and April 2005; Cleven treated Plaintiff a second time three weeks later on July 7, 2005.  [R. 228, 225.]  On a form originating from the Burke County Department of Social Services, Cleven opined that Plaintiff had no work capacity.  [R. 175.]

18

In August 2005, Cleven completed a "Psychiatric/Psychological Impairment Questionnaire" to be returned to Plaintiff's counsel. [R. 176–83.] She stated that Plaintiff was likely to be absent from work more than three times per month. [R. 183.] Cleven opined on a "Gastrointestinal Disorders Impairment Questionnaire" that Plaintiff's primary symptom was "inability to hold a steady job"; Plaintiff's experience of symptoms was "frequently" severe enough to interfere with attention and concentration; and Plaintiff was capable of "low stress" work. [R. 185, 187; *see also* R. 23.]

Regarding Miracle and Cleven's opinions, the ALJ wrote, "The undersigned finds these opinions . . . not consistent with the overall findings of other health professionals included in the record." [R. 26.] However, as Plaintiff argues, the ALJ failed to point to these inconsistencies, and the inconsistencies are not apparent from the ALJ's very summary discussion Plaintiff's medical records.

The ALJ noted the following from Plaintiff's medical history. As to Plaintiff's mental impairments, his primary care physician treated Plaintiff for depression through February 2004. [R. 22.] Plaintiff's depression symptoms worsened after he lost his job. [*Id.*] Plaintiff next received treatment from a family practitioner from August to December 2004. [*Id.*] On December 30, 2004, Plaintiff committed himself for five days of inpatient treatment for depression and suicidal ideation; his discharge diagnoses included moderate recurrent major depressive disorder. [R. 23.] After his discharge, Plaintiff received regular treatment for his psychiatric issues through July 2005[5] at New Vistas Behavioral Health Center. [*Id.*]

_____

[5]The ALJ mistakenly lists the end date as March 2006. [R. 23.]

Plaintiff returned for inpatient treatment in April 2005 and received diagnoses that included adjustment disorder with mixed disturbance of emotions and conduct; major depressive disorder, recurrent, partially treated; dependent traits; and status-post overdose. [*Id.*] The month following his discharge, Plaintiff saw a consultative examiner who diagnosed, *inter alia*, depression and anxiety. [*Id.*] Lastly, Plaintiff received treatment at the Veterans Administration Medical Center ("VAMC") beginning in December 2006 for ailments that included bipolar disorder. [R. 24.] The Court finds nothing in the ALJ's recitation that conflicts with the opinions submitted by Cleven or Miracle.

The ALJ further explained that the opinions given by Cleven and Miracle were on an issue that is reserved to the Commissioner and, thus, cannot be entitled to "controlling weight." [R. 26.] While the ALJ makes an accurate statement of law, that the determination of disability is left to the ALJ, when considering a claimant's residual functional capacity, an ALJ is expected to take into consideration all relevant evidence, both medical and non-medical. 20 C.F.R. § 404.1545(a)(3). SSR 06-03p specifies that opinions from medical sources, even when not "acceptable medical sources," "are important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-03p. And as the ALJ added, such opinions "must be carefully considered to determine the extent to which they are supported by the record in its entirety." [R. 26.] While the ALJ certainly has the ability to reject these opinions, the ALJ must, at a minimum, properly explain his reasoning for discrediting the opinions of Cleven

and Miracle, identifying specific evidence that contradicts their opinions.  Because the ALJ[6]

failed to provide substantial evidence to support his findings, this case will be remanded.

**Credibility**

Plaintiff complains that the ALJ's assessment of his credibility is inadequate.  Again,

the Court agrees.

"'In reviewing for substantial evidence, we do not undertake to reweigh conflicting

evidence, make credibility determinations, or substitute our judgment for that of the [ALJ].'"

*Johnson*, 434 F.3d at 652 (alteration in original) (quoting *Craig*, 76 F.3d at 589).  Yet the

Court's deference is not limitless, and the Commissioner has clearly set out the ALJ's

responsibility in making credibility findings:

> The reasons for the credibility finding must be grounded in the
> evidence and articulated in the determination or decision.  It is
> not sufficient to make a conclusory statement that "the
> individual's allegations have been considered" or that "the
> allegations are (or are not) credible."  It is also not enough for
> the adjudicator simply to recite the factors that are described
> in the regulations for evaluating symptoms. The determination
> or decision must contain specific reasons for the finding on
> credibility, supported by the evidence in the case record, and
> must be sufficiently specific to make clear to the individual and
> to any subsequent reviewers the weight the adjudicator gave
> to the individual's statements and the reasons for that weight.
> This documentation is necessary in order to give the individual

---

[6]  The Commissioner's Brief in Response thoroughly examines the record and offers reasons to uphold the ALJ's decision, but that task is not allotted to the Commissioner:

> [R]egardless whether there is enough evidence in the record to support the
> ALJ's decision, principles of administrative law require the ALJ to rationally
> articulate the grounds for her decision and confine our review to the reasons
> supplied by the ALJ.  That is why the ALJ (not the Commissioner's lawyers)
> must "build an accurate and logical bridge from the evidence to her
> conclusion."

*Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citations omitted).

> a full and fair review of his or her claim, and in order to ensure
> a well-reasoned determination or decision.

SSR 96-7p.

The ALJ stated, "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." [R. 25.] In the same paragraph, the ALJ makes two inconsistent statements: "the evidence shows [Plaintiff's] impairments do cause some work-related restrictions" and "[t]he record fails to identify any impairments or combination of impairments that would have limited the claimant's ability to perform work." [*Id.*] The Court is left to question which statement is an accurate reflection of the ALJ's finding with respect Plaintiff's work-related restrictions and how the credibility finding impacts the ALJ's ultimate finding regarding restrictions. Further, as Plaintiff complains, the ALJ provides no support for his credibility finding. Indeed, the ALJ sets forth a prime example of the type of credibility "analysis" Judge Posner has repeatedly objected to:

> The administrative law judge's opinion states that "after considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments would reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." This is a piece of boilerplate that appears in virtually identical language in both these cases as well as in a third social security disability case argued to us the same day. It is not only boilerplate; it is meaningless boilerplate. The statement by a trier of fact that a witness's testimony is "not *entirely* credible" yields no clue to what weight the trier of fact gave the testimony.

*Parker v. Astrue*, 597 F.3d 920, 921–22 (7th Cir. 2010) (emphasis in original); *see also Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir. 2011); *Martinez v. Astrue*, 630 F.3d 693, 696-97 (7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d 346, 352-53 (7th Cir. 2010); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006).

Consequently, "to read the ALJ's boilerplate credibility assessment is enough to know that it is inadequate and not supported by substantial evidence.  That is reason enough for us to reverse the judgment[.]"  *Punzio*, 630 F.3d at 709.  Therefore, the ALJ is directed on remand to follow the instructions in SSR 96-7p to explain his credibility finding.

**Vocational Expert's Testimony**

Plaintiff argues that the ALJ's decision is in error because the step five analysis is based on the vocational expert's response to a flawed hypothetical.  The Court agrees to the extent that the ALJ should reconsider the vocational expert's testimony and the ALJ's conclusion at step five after complying with the Court's directives regarding Plaintiff's credibility and Cleven and Miracle's opinions.

As previously stated, once the claimant reaches step five of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform.  *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).  Here, Plaintiff suffers from nonexertional limitations; therefore, the grids could serve only as guidelines for the ALJ's determination of whether Plaintiff could perform work that exists in the national economy.  *See Gory*, 712 F.2d at 931.  Where the grids may serve only as guidelines, the Commissioner must use a

23

vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a (2001); *see Walker*, 889 F.2d at 49–50.

The ALJ's first hypothetical to the vocational expert reflected the ALJ's eventual finding regarding Plaintiff's residual functional capacity. [*Compare* R. 1163, *with* R. 24.] The vocational expert responded with the three jobs upon which the ALJ relied in finding that Plaintiff was not disabled. [R. 27; *see also* R. 1164.] The ALJ, in another hypothetical, asked the vocational expert if these occupations would be available to a claimant if he were "unable to concentrate on even simple routin[e] tasks due to his mental health issues" and had "a hard time leaving home in order to function in society on a regular basis." [R. 1164.] The vocational expert responded that those occupations would not exist under those circumstances. [*Id.*]

It is clear that the hypothetical the ALJ relied on in finding that Plaintiff was not disabled did not include the limitations testified to by Plaintiff and proposed by his opining caregivers. Because the Court has concluded that the ALJ failed to properly explain his reasoning for discrediting Plaintiff's testimony and Cleven and Miracle's opinions, on remand, it is appropriate for the ALJ to also revisit the issue of hypothetical composition.

**New Evidence**

Finally, Plaintiff argues the Appeals Council failed to properly consider the evidence Plaintiff submitted with his request for review of the ALJ's decision. The Court agrees.

When denying Plaintiff's request for review, the Appeals Council acknowledged that it considered "additional evidence," which included "progress notes" from the VAMC, dated September 14, 2007, through September 10, 2009; and "Psychiatric/Psychological

24

Impairment Questionnaires" from Dr. Paul Lowe dated January 8, 2008, and August 31, 2009.  The Appeals Council reasoned that this evidence post-dated the ALJ's decision and thus was not relevant.  Plaintiff contends that this reasoning was in error.[7]

> The Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision."  Evidence is new within the meaning of this section if it is not duplicative or cumulative.  Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome.

*Wilkins v. Sec'y, Dept. of Health & Human Servs.*, 953 F.2d 93, 95–96 (4th Cir. 1991) (citations and footnote omitted).  Although the new evidence must "relate[] to the period on or before the date of the ALJ's decision," "[t]his does not mean that the evidence had to have existed during that period.  Rather, evidence must be considered if it has any bearing upon whether the Claimant was disabled during the relevant period of time."  *Reichard v. Barnhart*, 285 F. Supp. 2d 728, 733 (S.D. W. Va. 2003) (citing *Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987); *Cox v. Heckler*, 770 F.2d 411, 413 (4th Cir. 1985)*; Leviner v. Richardson*, 443 F.2d 1338, 1343 (4th Cir. 1971)).  Additionally, new evidence is "material" when it contradicts the ALJ's findings and conclusions regarding the severity of the claimant's medical problems.  *See Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1219 (11th Cir. 2001).

---

[7]Defendant argues that the Appeals Council decision is not subject to appeal.  The Court agrees that, generally, the Council's decision whether to review is discretionary and unreviewable.  *See, e.g.*, *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997).  But review of the Council's decision is allowed in the presence of legal error.  *See id.* at 1294; *see also Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001); *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994).  "Whether the evidence is new, material and related to the relevant period is a question of law reviewed de novo."  *Box v. Shalala*, 52 F.3d 168, 171–72 (8th Cir. 1995).  As discussed herein, however, because the Appeals Council incorporated the new evidence into the record, this Court is obliged to consider it in evaluating the ALJ's decision.

Plaintiff claimed to have suffered from "longstanding and chronic depressive illness . . . off and on" since about 1990. [R. 148; *see also* R. 262.] He had experienced problems with working since his business failed in the 1990s. [*See, e.g.*, R. 148, 262, 547.] At his last visit with Cleven, she noted that Plaintiff had "a lot of depression" and "a great deal of difficulty" with keeping a job. [R. 225.] At his hearing, Plaintiff testified that he was unable to work due to, *inter alia*, deep depression, problems with concentration, and panic attacks. [R. 1154.]

Paul Lowe, M.D., began treating Plaintiff two weeks after the ALJ rendered his decision. [R. 547.] At that time, Plaintiff admitted to recent "thoughts of hurting himself." [*Id.*]. In January 2008, Plaintiff told Dr. Lowe that he was "having thoughts about hurting himself," but did not want to die; at times, his depression became "overwhelming." [R. 525.] This is particularly significant as, during the July 2007 hearing, the ALJ expressed his belief that Plaintiff's depression "was better" after Plaintiff reconciled with his wife in 2005. [R. 1157.]

Continuing evidence proceeding unbroken from Plaintiff's hearing into the months after the ALJ issued his decision may serve as evidence as to Plaintiff's condition during the relevant period. *See, e.g.*, *Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 477 (4th Cir. 1999) (stating "with some assurance that a claimant's condition very likely remains unchanged within a discrete two-week period). Here, Dr. Lowe began treating Plaintiff two weeks after the ALJ rendered his decision. Plaintiff admitted at that time that he had recent "thoughts of hurting himself." It is unlikely that Plaintiff's condition at that time was different from his condition at the time the ALJ issued his decision.

26

In the Fourth Circuit, a reviewing court must include new evidence reviewed by the Appeals Council in its consideration of the record as a whole in determining whether substantial evidence supports the ALJ's decision.  *See Wilkins*, 953 F.2d at 96.  The Court has already determined that the ALJ's weighting of caregiver opinions was not supported by substantial evidence; the addition of the new evidence bolsters the Court's decision to remand.   The ALJ explained that the opinions he was asked to consider were not consistent with the findings of other health professionals, yet the opinions of Dr. Lowe, Plaintiff's treating physician after the ALJ decision, are consistent with the opinions of Cleven and Miracle.  *See Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006) (explaining that courts typically accord greater weight to the opinion of a treating physician) (quoting *Johnson*, 434 F.3d at 654); 20 C.F.R. § 404.1526(d)(5) ("We generally give more weight to the opinion of a specialist[.]").  For these reasons, the Court orders that, upon remand, the ALJ consider Dr. Lowe's January 2008 opinion and medical records leading thereto.[8]

---

[8]As recognized by the Tenth Circuit Court of Appeals,

> [t]here is no "dipstick" test for disabling depression.  *See Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 744 (10th Cir. 1993).  he accepted clinical technique for diagnosing such an impairment is to assess the existence and severity of symptoms and signs identified by the American Psychiatric Association in the  [*Diagnostic and Statistical Manual of Mental Disorders* 41 (4th ed., text rev. 2000).  *See id.*] at xxii-xxiv, 1-9.  This assessment is usually based on a patient's subjective reports and the psychologist's own observations.

*Schwarz v. Barnhart*, 70 F. App'x 512, 518 (10th Cir. 2003).  *See also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00B ("Symptoms and signs generally cluster together to constitute recognizable mental disorders[.]").  Adjudicators are not expected to, and are even precluded from, drawing their own conclusions from such raw data.  *See, e.g., Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so."); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (as a lay person, an ALJ is "simply not qualified to interpret raw medical data in functional terms").  Accordingly, the ALJ is well-advised to remember that "[s]evere depression is not the blues.  It is a mental illness; and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it."  *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995).  The ALJ may consult Dr. Lowe, *see* 20 C.F.R. § 404.1512(e)(1), or a medical expert, *see id.* § 404.1527(f)(2)(iii), for clarification or interpretation of Dr. Lowe's medical records and opinion.

*Cf. Craig*, 76 F.3d at 590 (finding "sufficient evidence" to justify the ALJ's rejection of the treating physician's opinion when the doctor's "own medical notes did not confirm his determination of 'disability'").

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence because the ALJ and the Appeals Council committed the errors addressed above.

Wherefore, based upon the foregoing, the Commissioner's decision is REVERSED pursuant to sentence four of 42 U.S.C. § 405(g) and the case is REMANDED to the Commissioner for further administrative action consistent with this Order.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States Magistrate Judge

April 7, 2011
Greenville, South Carolina